UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__4/11/2022__
```

-------------------------------------------------------------------X
                                     :

1199SEIU UNITED HEALTHCARE WORKERS EAST, :

                       Petitioner,    :

                                       :         22-cv-531 (LJL)

        -v-                        :

                                       :     MEMORANDUM &

ALARIS HEALTH AT HAMILTON PARK,     :        ORDER

CONFIDENCE MANAGEMENT SYSTEMS,    :

                                       :

                    Respondents.    :

-------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Petitioner 1199SEIU United Healthcare Workers East (the "Union") moves to confirm an arbitral award entered by Arbitrator Martin F. Scheinman, Esq. (the "Arbitrator") against Respondent Alaris Health at Hamilton Park ("Alaris") and Confidence Management Systems ("CMS") (collectively, "Respondents"). *See* Dkt. No. 9.

## BACKGROUND

      Pursuant to a Collective Bargaining Agreement ("CBA") with the Union, Respondents were required to pay employees covered by the CBA minimum-wage rates and to apply the terms and conditions of the CBA to employees who performed certain work.  The CBA contains an arbitration clause, pursuant to which a grievance that has not been satisfactorily adjusted or responded to by the Respondent may be submitted to arbitration "for final and binding resolution."  Dkt. No. 1-2 at Art. 11.2–11.3.  The CBA states that "[t]he parties agree that [Martin] Scheinman shall be named arbitrator," *id.* at Art. 11.6, and provides that "[t]he decision of the Arbitrator shall be final and conclusively determine the matter . . . and the decision shall have the effect of a judgment which shall be entered upon the award in a count [sic] of

competent jurisdiction," *id.* at Art. 11.7.  It further provides that "[t]he Arbitrator is empowered to determine his jurisdiction; all questions of arbitrability; to grant all appropriate remedies; to include in his award mandatory and injunctive relief; and to determine the appropriate measure of damages."  *Id.*

The instant dispute between the Union and Respondents has a relatively long history.  In 2013, the Union submitted to arbitration the parties' dispute regarding Respondent's failure to pay employees minimum contractual wage rates and failure to apply the CBA to certain work performed.  Dkt. No. 1 ¶ 14.  For years, respondents failed to provide the Union information necessary for the Arbitrator to determine damages, including basic payroll and employee data, despite direction from the Arbitrator to do so.  *Id.* ¶¶ 15–16.  As a result of Respondent's failure to provide the requested documents, the Union filed unfair labor practice charges with the National Labor Relations Board ("NLRB").  *Id.* ¶ 17.  The parties also continued with arbitration.  *Id.* ¶ 18.

In December 2015, the Arbitrator issued an award finding that Respondents had violated the CBA by failing to pay contractual minimum wages and granted attendant relief (the "2015 Award").  Dkt. No. 1 ¶ 20; *see also* Dkt. No. 1-1 at 2.  The Arbitrator deferred specifying the damages owed to the employees because Respondents had still not produced the payroll records necessary to calculate damages.  Dkt. No. 1 ¶ 21.  In 2016, an Administrative Law Judge ("ALJ") of the NLRB found that this failure to produce requested documents was a violation of the National Labor Relations Act, and in 2017, the NLRB affirmed the ALJ's findings and ordered the Respondents to produce the requested documents.  *Id.* ¶¶ 23–24.  When the Respondents still failed to do so, the NLRB sought enforcement of the order in the Third Circuit, which it ultimately obtained.  *Id.* ¶¶ 25, 31; *see also* Dkt. No. 1-1 at 2, n.3.

In early 2018, the Arbitrator issued an award finding that the Respondents violated the CBA by failing to apply it to certain work performed and ordered Respondents to (i) cease and desist from violating the CBA, (ii) apply the terms of the CBA to the employees at issue, and (iii) make all adversely affected employees whole (the "2018 Award").  Dkt. No. 1 ¶ 27; *see also* Dkt. No. 1-1 at 2.  As with the 2015 Award, the Arbitrator did not specify damages owed in connection with the 2018 Award because Respondents had not produced necessary documentation.  Dkt. No. 1 ¶ 28.  The Union filed a petition in the District Court for the Southern District of New York to enforce the 2018 Award, but, because the damages had not yet been determined, that action did not address the damages owed pursuant to the 2018 Award.  *Id.* ¶ 30.  In August 2018, Judge Rakoff confirmed the 2018 Award, *id.* ¶ 33; in so doing, he rejected Alaris' argument that it never agreed to submit to grievance arbitration after the CBA's original expiration date of February 28, 2013.  *See 1199SEIU United Healthcare Workers East v. Alaris Health at Hamilton Park*, 2018 WL 9651077, at *4–5 (S.D.N.Y. Sept. 4, 2018).  In September 2018, Judge Rakoff ordered Respondents to produce the documents needed to determine damages and interest owed pursuant to the 2018 Award.  *Id.* ¶ 34.  Respondents still did not do so, so Judge Rakoff found that Respondents were in contempt of court and imposed sanctions.  *Id.* ¶ 37.

Respondents eventually produced the majority of records the Union needed to calculate the damages owed pursuant to the 2015 Award and 2018 Award.  *Id.* ¶¶ 37, 39.  Because Respondents and the Union could not agree on the damages owed pursuant to these awards, they returned to the Arbitrator for further proceedings.  *Id.* ¶¶ 40–42.  After receiving multiple submissions from the Union and the Respondents on the calculation of damages, the Arbitrator issued an award in October 2020 that partially addressed the damages owed (the "October 2020

Award"); on March 31, 2021, he issued a final damages award, adding a "Supplemental Award" to "be added to the October 6, 2020 damages [a]ward" for the damages also attributable to the 2015 Award and the 2018 Award (the "March 2021 Award" or the "Award"). *Id.* ¶¶ 61–62, 70; *see also* Dkt. No. 1-1. The March 2021 Award set forth both the amounts awarded pursuant to the October 2020 Award and pursuant to the Supplemental Award. To date, Respondents have not paid any of the money owed to employees pursuant to the March 2021 Award.

The October 2020 Award required Respondents to pay: (1) $252,798.25 in back pay, plus interest at a rate of 9% annually through February 9, 2019,[1] for affected employees who worked for Alaris, and $51, 729.42 for affected employees of CMS, both pursuant to the 2015 Award; and (2) $24,140.67 in back pay, plus interest at a rate of 9% annually through February 9, 2019, for affected employees who worked for Alaris, and $39,401.31, plus interest at a rate of 9% annually for affected employees of CMS pursuant to the 2018 Award. *See* Dkt. No. 1-1 at 4; *see also* Dkt. No. 1-21. The October 2020 Award also required Respondents to provide the Union with updated payroll records so that the parties could submit calculations of back pay owed to affected employees from the period from February 9, 2019, through September 30, 2020. Dkt. No. 1-1 at 4–5. The award explained that "[s]hould the [Respondents] fail to produce the payroll records so ordered . . . I will accept the Union's good faith estimate of back pay owed, plus interest from February 9, 2019, through September 30, 2020." *Id.* at 5.

Because Respondents did not produce the payroll records so ordered, the Arbitrator accepted the Union's damages calculations for the period through September 30, 2020 and added that to the October 2020 Award. Dkt. No. 1-1 at 7. This "supplemental damages" section of the

---

[1] In the October 2020 Award, the Arbitrator ruled that the interest was to be awarded at a rate of 9% annually "to be calculated from the first payroll period damages are owed until the date of implementation of the Awards." Dkt. No. 1-24.

March 2021 Award names a number of individuals who worked for Alaris or CMS and were entitled to receive back pay pursuant to the 2015 Award through September 30, 2020, plus interest at 9% annually; it also lists the amount that they were each owed. *Id.* at 7–10. The back pay owed through February 9, 2019 of these individuals were included in the amount calculated for the October 2020 Award—and so the supplemental amount was only for the period between February 9, 2019 and September 2020—but the section also lists other individuals who had been excluded entirely from the October 2020 Award. It similarly set forth the amounts owed for a number of individuals owed back pay or compensation for paid time off pursuant to the 2018 Award through September 30, 2020, plus interest at 9% annually. *Id.* at 10–13.

The March 2021 Award set the total amount for the back pay owed pursuant to the 2015 Award through September 30, 2020 for those employees excluded from the original calculation in the October 2020 Award as: $7,570.32 for Alaris employees, *see* Dkt. No. 1-1 at 7–8; Dkt. No. 1-25 at ECF p. 9,[2] $40.90 for CMS employees, *see* Dkt. No. 1-1 at 8; Dkt. No. 1-25 at ECF p. 10, and $16,206.64 for Certified Nursing Assistants ("CNAs") and Recreation Aids at Alaris, *see* Dkt. No. 1-1 at 8; Dkt. No. 1-25 at ECF p. 15.[3] It set the total amount for back pay owed

---

[2] The Arbitrator's calculations for the supplemental award are based on the Union's submission. *See* Dkt. No. 1-1 at 7 ("I hereby accept the Union's damages calculations for the period through September 30, 2020."). The Court observes, however, that there are minor discrepancies between the values submitted to the Arbitrator by the Union and those adopted by the Arbitrator in that the values adopted by the Arbitrator are occasionally a few cents less than those proposed by the Union. *Compare* Dkt. No. 1-25 at ECF p. 9 (listing the back pay owed for Precious Carswell as $48.86 and for Justina Eze as $58.14) *with* Dkt. No. 1-1 at 7 (listing the back pay owed for Precious Carswell as $48.46 and for Justina Eze as $58.09). The total amount set forth in this portion of the March 2021 Award is therefore slightly less than the total amount shown on the Union's submissions on which the Award is based.

[3] The Arbitrator's calculations for the supplemental award for the CNAs and Recreation Aids is also slightly different from the amount submitted by the Union. *Compare* Dkt. No. 1-25 at ECF p. 15 (listing amount owed to Teyonnah Spinner as $121.27) *with* Dkt. No. 1-1 at 8 (listing amount owed to Teyonnah Spinner as $121.77). The total amount set forth in this portion of the March 2021 Award is therefore slightly more than the total amount shown on the Union's

pursuant to the 2015 Award and through September 2020 for other Alaris employees was
$100,499.30, Dkt. No. 1-1 at 8; Dkt. No. 1-25 at ECF p. 12, and for CMS employees was
$18,874.80, Dkt. No. 1-1 at 9; Dkt. No. 1-25 at ECF p. 13.  The total amount for back pay owed
pursuant to the 2018 Award through September 30, 2020 to Alaris employees was $2,703.35, *see*
Dkt. No. 1-1 at 10–11; Dkt. No. 1-25 at ECF p. 6, and for CMS employees was $75.40, *see* Dkt.
No. 1-1 at 11; Dkt. No. 1-25 at ECF p. 7.  The total amount for paid time off owed pursuant to
the 2018 Award was $57,823.77 for Alaris employees and $27,595.40 for CMS employees.[4]  *See*
Dkt. No. 1-1 at 11–13; Dkt. No. 1-25 at ECF pp. 17–19.  These amounts are exclusive of the 9%
interest awarded by the Arbitrator for most sums.

On January 20, 2022, the Union filed a petition to confirm the March 2021 Award,
seeking an order and judgment confirming and enforcing the March 2021 Award, directing the
Respondents to pay all monies owed pursuant to the March 2021 Award, and awarding the
Union costs and other relief.  *See* Dkt. No. 1.  On February 7, 2022, the Union filed affidavits of
service showing that service of the petition was made on Alaris and CMS.  *See* Dkt. Nos. 7–8.
The Union filed a motion to confirm the March 2021 Award on February 23, 2022, Dkt. No. 9,
and the Court entered an order directing the Union to serve Respondents with the motion and a
copy of the Court's order and for Respondents to the motion by March 25, 2022, Dkt. No. 10.
Despite being served with the motion and the order, neither Alaris nor CMS has not submitted a
response.

---

submissions on which the Award is based.
[4] The Union's submission has a total for paid time off owed to Alaris employees of $60,474.94.
It appears that, in recording the amounts owed to each individual working for Alaris Health, the
Arbitrator listed the amount owed to Kenneth Bautista in the line for Justine Bansil and did not
record any money owed to Bautista, ultimately omitting the $2,651.17 attributable to Bansil.  *See*
Dkt. No. 1-1 at 11; Dkt. No. 1-25 at 17.

**DISCUSSION**

"Section 301 of the [LMRA] provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards." *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998); *see also* 29 U.S.C. § 185.

"[A] federal court's review of labor arbitration award of labor arbitration awards is 'narrowly circumscribed and highly deferential.'" *N.Y.C. & Vicinity Dist. Council of Carpenters v. Empire State Realty Trust*, 2022 WL 193005, at *3 (S.D.N.Y. Jan. 21, 2022) (quoting *ABM Indus. Grps., L.L.C. v. Int'l Union of Operating Eng'rs, Local 30, 30A, 30B, AFL-CIO*, 968 F.3d 158, 161 (2d Cir. 2020)). "[I]t is the arbitrator's view of the facts and the meaning of the contract for which the parties bargained," and courts are "not permitted to substitute their own." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016). Thus, "the arbitrator's construction of the contract and assessment of the facts are dispositive, 'however good, bad, or ugly.'" *Id.* (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 573 (2013)). The Court's task "is simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworks Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). And "[a]s long as the award 'draws its essence from the collective bargaining agreement and is not merely the arbitrator's own brand of industrial justice,' it must be confirmed." *Id.* (quoting *Int'l Bhd. of Elec. Workers v. Niagara Mohawk Powe Corp.*, 143 F.3d 704, 714 (2d Cir. 1998)).

"When a petition to confirm an arbitration award is unopposed, courts should generally treat 'the petition and accompanying record . . . as akin to a motion for summary judgment.'" *Trustees of N.Y.C. Dist. Council of Carpenters of Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Eclipse Constr. Servs. Inc.*,

2021 WL 5567752, at *4 (S.D.N.Y. Nov. 26, 2021) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006)).  Thus, "unopposed confirmation petitions 'must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'"  *Id.* (quoting *Gottdiener*, 462 F.3d at 109).

        Based on a review of the materials submitted by Petitioner and the applicable law, the Court concludes that Petitioners are entitled to confirmation of the Award.  The record indicates that the Arbitrator based the damages amounts set forth in his March 2021 Award on the submissions of the parties—adopting the Respondent's view of damages in his October 2020 Award that was incorporated into his March 2021 Award, *see* Dkt. No. 1-1 at 5–6; Dkt. No. 1-21, and the Petitioner's undisputed view of the damages in the Supplemental Award in his March 2021 Award, *see* Dkt. No. 1-1 at 7–13; Dkt. No. 1-25—and not on his "own brand of industrial justice." *Niagara Mohawk Power Corp.*, 196 F.3d at 124.  The submissions by the Plaintiff While there are certain portions of the March 2021 Award that appears to have transcribed amounts incorrectly or omitted certain sums, those errors are minor and do not so affect the integrity of the Award that the Award cannot be said to "draw its essence from the collective bargaining agreement." *Id.*; *cf. Supreme Oil Co., Inc. v. Abondolo*, 568 F. Supp.2d 401, 406 (S.D.N.Y. 2008) ("Even if the Court is convinced that the '[arbitrator] committed serious error,' the award should not be vacated so long as the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority.'" (quoting *Misco*, 484 U.S. at 38–39)).  In any event, these errors are to the detriment of the Petitioner, which seeks enforcement of the Award and does not seek to modify it.   The issuance of the March 2021 Award was also within the scope of the Arbitrator's authority under the CBA, which empowers the Arbitrator "to grant all appropriate remedies . . . and to determine the appropriate measure of damages," Dkt. No. 1-2

at Art. 11.7, and expressly allows for the Arbitrator to assess interest at the legal rate on arbitration awards in certain circumstances and in no event prohibits the imposition of interest, *see* Dkt. No. 1-2; *id.* at Art. 28.5, 28.8, 29.6; *see also* Dkt. No. 1-24 at 18 (Arbitrator explaining that "[t]he authority to award interest stems from Article 11.7 of the Collective Bargaining Agreement which authorizes me to 'grant all appropriate remedies' and 'to determine the appropriate measure of damages'"). And it was issued as a follow-on to an arbitration award that was already confirmed by a judge in this District as being within the authority of the Arbitrator. *See 1199SEIU*, 2018 WL 9651077, at *6 (confirming 2018 Award over challenge by Respondents). In such circumstances, the Court cannot say that the Arbitrator acted outside of his authority in issuing the March 2021 Award; accordingly, the Court grants Petitioner's motion and confirms the Award.

Petitioners also request pre- and post-judgment interest. "It is in the discretion of the trial court whether to award pre-judgment interest in an action to confirm an arbitration award, but there is a general 'presumption in favor of prejudgment interest.'" *1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc.*, 2014 WL 840965, at *8 (S.D.N.Y. Mar. 4, 2014) (quoting *Waterside Ocean Navigation Co. v. Int'l Navigation, Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984)). And "courts in this district have found that 'pre-judgment interest is appropriate in an action to confirm an LMRA award when the relevant agreement indicates that the award is "final and binding."'" *Id.* (quoting *NY.C. Dist. Council of Carpenters v. Gen-Cap Indus., Inc.*, 2012 WL 2958265, at *3–4 (S.D.N.Y. July 20, 2012)). Here, the CBA provides that grievances may be submitted to arbitration "for final and binding resolution." Dkt. No. 1-2 at Art. 11.3. Pre-judgment interest in the amount of nine percent per annum, as provided for under New York State law, is appropriate. *See 1199 SIEU*, 2018 WL 9651077, at *7; *see also Gen-Cap Indus.,*

*Inc.*, 2012 WL 2958265, at *4 ("The common practice among courts within the Second Circuit is to grant interest at a rate of nine percent per annum—which is the rate of prejudgment interest under New York State law, N.Y.C.P.K.R. §§ 5001–5004—from the time of the award to the date of the judgment confirming the award." (internal quotation marks and citation omitted)). The Court will award such interest from March 31, 2021—the date of the award—to the date of judgment.

"Post-judgment interest is also warranted in the instant case, as it 'is "allowed on any money judgment in a civil case recovered in a district court."' *1199SEIU*, 2018 WL 9651077, at *7 (quoting *N.Y.C. Dist. Council of Carpenters v. JFD Sales Consulting Servs. Corp.*, 2017 WL 4736742, at *3 (S.D.N.Y. Oct. 19, 2017)). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). The Court will award post-judgment interest at the statutorily prescribed rate.

In addition, the Court concludes that Petitioners are entitled to attorney's fees and costs as requested and incurred in connection with this petition and motion. "Courts 'have routinely awarded attorney's fees in cases where a party merely refuses to abide by an arbitrator's award without challenging or seeking to vacate it through a motion to the court.'" *Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund v. W.W. Timbers, Inc.*, 2020 WL 1922374, at *4 (S.D.N.Y. Apr. 21, 2020) (quoting *Abondolo v. H. & M.S. Meat Corp.*, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008)). Thus, "'when a challenger refuses to abide by an arbitrator's decision without justification, attorney's fees and costs may properly be awarded'" pursuant to a court's inherent equitable powers. *N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel*

*Const. Grp.,* LLC, 2009 WL 256009, at *2 (S.D.N.Y. Feb. 3, 2009) (Sullivan, J.) (quoting *Int'l*

*Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir.

1985)).  Given that Respondents have not abided by the March 2021 Award, have repeatedly

refused to provide documentation, and have thus contributed in large part to the long duration of

this dispute, and have failed to participate in this action, the Court finds that an award of

attorney's fees and costs is appropriate.

## CONCLUSION

For the reasons stated above, the Petition is GRANTED, and the Award is

CONFIRMED.  Petitioner is directed to prepare a judgment against Respondents Alaris Health at

Hamilton Park and Confidence Management Systems and in favor of 1199SEIU United

Healthcare Workers East for the amount set forth in the March 2021 Award, inclusive of 9%

interest on relevant sums calculated for the time periods set forth in the Award for the various

sums.  Petitioner is also entitled to pre-judgment interest on the total amount of the Award from

March 31, 2021—the date of the March 2021 Award—until the date the judgment is entered, and

this shall be included in the judgment Petitioner prepares.  Petitioner shall submit this proposed

judgment to the Court no later than April 25, 2022 and serve a copy of the same on the

Respondents on the day of submission.  The proposed judgment should be accompanied by a

document setting forth the calculations by which Petitioner has come to the total sum in the

proposed judgment.

Petitioner shall also receive post-judgment interest on this amount accruing from the date

of this Opinion "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week

preceding the date of the judgment."  28 U.S.C. § 1961(a).

Respondents shall also pay attorneys' fees and costs incurred in connection with the

petition at Dkt. No. 1 and the motion at Dkt. No. 9.

The Clerk of Court is respectfully directed to close Dkt. No. 9.

SO ORDERED.

Dated: April 11, 2022
   New York, New York

            LEWIS J. LIMAN
           United States District Judge