```
                                                              USDC SDNY
                                                              DOCUMENT
UNITED STATES DISTRICT COURT                                  ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                                 DOC #:_____
---------------------------------------------------------------X  DATE FILED: 11/28/2022
                                                   :
1199SEIU UNITED HEALTHCARE                         :
WORKERS EAST,                                      :
                                                   :
                           Petitioner,             :          1:22-cv-00531 (LJL)
                                                   :
            -v-                                    :          OPINION AND ORDER
                                                   :
ALARIS HEALTH AT HAMILTON PARK and                 :
CONFIDENCE MANAGEMENT SYSTEMS,                     :
                                                   :
                           Respondents.            :
                                                   :
---------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

On April 11, 2022, the Court entered default judgement against Respondents Alaris Health at Hamilton Park ("Alaris") and Confidence Management Systems ("CMS" and, together with Alaris, "Respondents"). In doing so, the Court granted the petition to confirm an arbitral award in favor of Petitioner 1199SEIU United Healthcare Workers East ("Petitioner"), issued in March 2021.

Respondents move, pursuant to Federal Rules of Civil Procedure 60(b), to vacate the judgment entered against them on April 11, 2022. Dkt. No. 27. For the reasons set forth below, the motion to vacate the judgment is denied.

## BACKGROUND

The instant dispute between the parties has a relatively long history, which is outlined in detail in this Court's prior judgment. *See 1199SEIU United Healthcare Workers E. v. Alaris Health at Hamilton Park,* 2022 WL 1080707 (S.D.N.Y. Apr. 11, 2022); Dkt. No. 16. Accordingly, the Court assumes familiarity with the facts and procedural history prior to the

entry of default judgment. The Court describes only the most salient facts relevant to the disposition of this motion below.

On June 2013, Petitioner submitted to arbitration the parties' dispute regarding Respondents' failure to pay employees minimum contractual wage rates and failure to apply a Collective Bargaining Agreement ("CBA") with Petitioner to employees who performed certain work. Dkt. No. 1 ¶ 14. Following years of arbitration, the Arbitrator Martin F. Scheinman, Esq. ("Arbitrator") issued awards in 2015, 2018, and 2020. Dkt. No. 1 ¶¶ 20, 27, 61–62. Respondents, however, failed to produce documents needed to assess damages and interest. *Id.* ¶¶ 21; 28; Dkt. No. 1-1 at 7. After Respondents eventually produced the majority of the records Petitioner required to calculate damages owed pursuant to prior arbitral awards, the Arbitrator issued a final damages award on March 31, 2021 (the "March 2021 Award"). Dkt. No. 1-1. Throughout this process, David F. Jasinski, Esq. ("Jasinski") represented Respondents. Dkt. No. 29 ("Gold Decl.") ¶¶ 5-6.

On January 20, 2022, Petitioner filed a petition to confirm the March 2021 Award ("Petition"). *See* Dkt. No. 1. Respondents sought an order and judgment confirming and enforcing the March 2021 Award, directing the Respondents to pay all monies owed pursuant to the March 2021 Award, and awarding Petitioner costs and other relief. *See* Dkt. No. 1. On February 7, 2022, Petitioner filed affidavits of service demonstrating that service of the Petition was made on Alaris and CMS. *See* Dkt. Nos. 7, 8.

Petitioner filed a motion to confirm the March 2021 Award on February 23, 2022. Dkt. No. 9. The next day, the Court entered an order directing Respondents to reply to Petitioner's motion by March 25, 2022 and directing Petitioner to serve a copy of the Court's Order on Respondents. *See* Dkt. No. 10. Petitioner filed affidavits of service on February 28, 2022. *See*

2

Dkt. Nos. 13, 14.  Despite being served with the motion and the Order, neither Alaris nor CMS submitted a response.

On April 11, 2022, in a twelve-page Memorandum and Order, the Court granted the Petition and confirmed the March 2021 Award.  This Court also granted Petitioner pre-judgment interest, post-judgement interest, and attorney's fees and costs.  *See* Dkt. No. 16 at 10–11.  At the direction of the Court, *id.* at 11, Petitioner filed a proposed judgment on April 25, 2022 ("First Proposed Judgment"), Dkt. No. 17, and served copies of the proposed judgment on Respondents, Dkt. Nos. 18, 19.  On April 5, 2022, Katherine H. Hansen ("Hansen"), counsel for Petitioner, emailed Jasinski, Michael Lifschutz ("Lifschutz"), an administrator at Alaris, and Brian Powers ("Powers"), Vice President of Operations for CMS, and attached Petitioner's letter requesting that the Court sign a proposed order enforcing the arbitration award.  Dkt. No. 34 ¶ 11; Dkt. Nos. 34-5.  On May 3, 2022, the Court identified certain deficiencies in the proposed judgment and directed Petitioner to submit a revised proposed judgment.  Dkt. No. 20.  Petitioner submitted a revised proposed judgment on May 10, 2022 ("Second Proposed Judgment"), Dkt. No. 22, which the Court entered on May 11, 2022, *see* Dkt. No. 23.  Throughout this time period, Respondents did not appear.

On September 27, 2022, Respondents filed this motion to vacate the Court's judgment, pursuant to Federal Rule of Civil Procedure 60(b).  Dkt. No. 27.  Respondents have filed declarations of both Jasinski, *see* Dkt. No. 28 ("Jasinski Decl."), and Mendel Gold ("Gold"), a Representative at Alaris, *see* Gold Decl.  Petitioner submitted a memorandum of law in opposition on October 25, 2022, Dkt. No. 34, to which Respondents replied on November 8, 2022, Dkt. No. 33.

**LEGAL STANDARD**

A motion to vacate a default judgment is "addressed to the sound discretion" of the district court. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (quoting *State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166 (2d Cir. 2004)); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). "As relevant here, a Rule 60(b) motion to vacate a judgment may be granted on the basis of 'excusable neglect,' Fed. R. Civ. P. 60(b)(1), or for 'any other reason justifying relief from the operation of the judgment,' Fed. R. Civ. P. 60(b)(6); *see also* Fed. R. Civ. P. 55(c) (providing that default judgments may be set aside in accordance with Rule 60(b))." *Gunnells v. Teutul*, 469 F. Supp. 3d 100, 102 (S.D.N.Y. 2020). In determining whether a default judgment should be set aside pursuant to Rule 60(b), the court considers: "(1) whether the default was willful; (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the non-defaulting party prejudice." *Green*, 420 F.3d at 108 (quoting *State Street*, 374 F.3d at 166–67); *see also State Univ. of New York v. Triple O, LLC*, 2022 WL 14177198, at *2 (2d Cir. Oct. 25, 2022) (summary order). These factors are applied "more rigorously in the case of a default judgment" rather than in a challenge to the entry of a default, "because the concepts of finality and litigation repose are more deeply implicated in the [default-judgment] action." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). But even still, the Second Circuit has "expressed a strong 'preference for resolving disputes on the merits.'" *Green*, 420 F.3d at 104 (quoting *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)).

**DISCUSSION**

Respondents argue that relief is appropriate under Rule 60(b)(1) because Jasinksi engaged in excusable neglect and they have a meritorious defense. Dkt. No. 27 at 5. They also claim that their default was the result of exceptional circumstances, and thus should be vacated

4

pursuant to Rule 60(b)(6).  *See id.* at 9.  Petitioner argues that Respondents' justifications are vague, lack detail, and do not qualify for relief under Rule 60(b).  Dkt. No. 33 at 9–10.

The Court addresses each of Respondents' requests for relief in turn and finds that Respondents are not entitled to relief under Rule 60(b).

**I.      Relief Under Rule 60(b)**

Both Respondents and Petitioner situate their arguments within the test for "excusable neglect" announced in *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993).  This test looks to "(1) the danger of prejudice to the non-movant, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith."  *Id.* at 395.  However, the Second Circuit applies another, "less stringent" test in the case of default judgments—that is, a test that is easier for the movant to satisfy.  *See Trustees of Loc. 7 Tile Indus. Welfare Fund v. Gibraltar Contracting, Inc.*, 2020 WL 9209262, at *4 (E.D.N.Y. Oct. 23, 2020), *report and recommendation adopted*, 2021 WL 1207123 (E.D.N.Y. Mar. 31, 2021); *see also State Univ. of New York*, 2022 WL 14177198, at *2 (applying three-part test in motion to vacate a default judgment).  "When a court applies the less stringent Second Circuit test and finds that the movant has not established excusable neglect, it need not address the *Pioneer* factors."  *Gibraltar Contracting, Inc.*, 2020 WL 9209262, at *4.  Both parties make the relevant arguments when addressing the *Pioneer* factors and Rule 60(b)(6), and the Court uses this analysis to inform its decision.  For the reasons set forth below, the Court denies Respondents' motion to vacate the default judgment.

A.     **Willfulness**

The willfulness element addresses "those defaults that arise from egregious or deliberate conduct." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996).  The Second Circuit has "defined 'willfulness' to include 'conduct that is more than merely negligent or careless,' such as where the behavior 'was egregious and was not satisfactorily explained.'" *State Univ. of New York*, 2022 WL 14177198, at *3 (quoting *McNulty*, 137 F.3d at 738); *see also Bricklayers & Allied Craftworkers*, 779 F.3d 182, 186 (2d Cir. 2015) (same); *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) ("[I]t is sufficient that defendant defaulted deliberately.").  "The subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *Am. All. Ins. Co.*, 92 F.3d at 61.  Here, the Court finds that Respondents' actions were willful.

Respondents do not dispute that they were properly served by Petitioner throughout these proceedings.  *See* Powers Decl. ¶¶ 6–7; Gold Decl. ¶ 7.  Respondents were served with the Petition on February 1 and 2, 2022, *see* Dkt. Nos. 7–8; Petitioner's motion to confirm the arbitration award and the Court's February 23, 2022 Order directing Respondents to respond to Petitioner's motion later in February 2022, *see* Dkt. Nos. 11–14; and Petitioner's First Proposed Judgment on April 26 and 27, 2022, *see* Dkt. Nos. 18–19.  They failed to respond to any of those submissions and failed to appear.  Respondents nevertheless argue that their failure to respond to the Petition for nearly seven months, during which time the Court confirmed the arbitration award and carefully scrutinized Petitioner's proposed judgments, should be excused either because they were not represented in this matter, Dkt. No. 27 at 1, or, if they were represented, "due to personal and professional stressors" in their lawyer's life, Dkt. No. 27 at 7.  Respondents' arguments suffer from multiple defects.

6

First, Respondents do not dispute that they were aware of the Petition and the need to respond to it when they were served in early February. Respondents explicitly acknowledge that Petitioner "completed service upon its agent Michael Lifschutz," Dkt. No. 27 at 3, and on Powers, *see* Powers Decl. ¶¶ 5–6. Lifschutz and Powers were also sent an April 5, 2022 communication from Petitioner's counsel. Dkt. No. 34 ¶ 11; Dkt. No. 34-4. This communication included a letter filed with the Court indicating that Respondents were served with the Petition and related papers and the motion to confirm the Petition and had failed to appear. *See* Dkt. No. 15. The letter also requested that the Court sign the proposed order enforcing the arbitration award. Both Gold and Powers reached out to counsel repeatedly: Powers reached out to Jasinski twice in February 2022 and twice in April 2022 and again in May, *see* Powers Decl. ¶¶ 6–7, 10–12; Gold reached out to Jasinski repeatedly in April, May, and June 2022, *see* Gold Decl. ¶¶ 7–12. They also knew that counsel was not responding to their outreach and had no indication that Jasinski was in fact handling the response. At that point, it was clear that no one had appeared to defend them. It was not sufficient then for Respondents to wait even more time until after judgment was entered and collection efforts began. Respondents were obligated to respond to the Petition and, if the failure to do so was because they could not get their longtime counsel to respond, then their obligation was to find new counsel to represent them or, at a bare minimum, to find someone to request an extension for them, either from Petitioner or from the Court. They did nothing and they offer no reason for this failure. That alone is sufficient to find Respondents actions willful. *See Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (Where defendant "does not deny that he received the complaint, the court's orders, or the notice of default judgment" and "does not contend that his non-compliance was due to circumstances beyond his control, . . . an inference of willful default"

is supported); *Com. Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994) (upholding adoption of magistrate's report that found that "an inference of willful default was justified" because defendants "never stated that they failed to receive actual notice of the claims against them" and did not present facts that would indicate that their failure to respond was outside of their control (internal quotation marks omitted)).

Second, Respondents' efforts to blame their arbitration counsel Jasinski for their failure to respond to the Petition would fail of their own force, even if he alone were the person designated to receive service of the relevant motions and correspondence.  Jasinski claims that the first time he learned about this action was when he received Petitioner's two proposed judgments in this matter on April 25, 2022 and May 10, 2022.  Jasinski Decl. ¶ 9.  That assertion, however, is belied by the record in this case.  Hansen emailed Jasinski multiple times after filing the enforcement action. Dkt. No. 34 ¶¶ 5–8, 10–11.  On January 19, 2022 and January 26, 2022, Hansen emailed Jasinski asking whether he would accept service of the papers associated with Petitioner's enforcement action on behalf of his clients, *see id.* ¶¶ 6, 8; Dkt. No. 34-2; on February 28, 2022, Hansen also emailed Jasinski the legal documents that had been filed, *see* Dkt. No. 34 ¶ 10; Dkt No. 34-3; and on April 5, 2022, Hansen emailed Jasinski, Lifschutz, and Powers, attaching a letter memorandum requesting that the Court sign a proposed order enforcing the arbitration award, *see* Dkt. No. 34 ¶ 11; Dkt. No. 34-4.  Jasinski claims that he "searched [his] inbox since and did not find records of either" the February 28, 2022 or April 5, 2022 emails and that, to his "recollection," he did not otherwise speak to Hansen "at any time during the pendency of the" action, Jasinski Decl. ¶ 8, but he does not specifically deny receipt of the earlier communications.  The fact that a communication was sent to Jasinski's email creates an inference that it was received.  *Cf. Hagner v. United States*, 285 U.S. 427, 430 (1932)

("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed."); *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019) ("[T]he mailbox rule, . . . is a rebuttable, common-law presumption that a piece of mail, properly addressed and mailed in accordance with regular office procedures, has been received by the addressee."). Additionally, Powers, the Vice President of Operations at CMS, asserts that he emailed Jasinski that CMS had been served by Petitioner, *see* Powers Decl. ¶¶ 6, 7; Jasinski does not dispute that he received these emails. And Alaris's standard practice requires Lifschutz to forward the document to the Risk Management Team, who would then reach out to Jasinski, Gold Decl. ¶¶ 4–5; Respondents conspicuously fail to argue that these procedures were not followed and that Jasinski did not receive notice through Alaris.

Even crediting Jasinski's assertions, however, would not establish excusable neglect on the part of Respondents. "Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'" *McNulty*, 137 F.3d at 739 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1961)) (alteration accepted). For that reason, courts have "consistently refused to relieve a client of the burdens of a final judgment entered against him due to the mistake or omission of his attorney." *Id.* (internal quotation marks omitted) (quoting *United States v. Cirami*, 535 F.2d 736, 739 (2d Cir. 1976)); *see, e.g.*, *RL 900 Park LLC v. Ender*, 2020 WL 70920, at *3 (S.D.N.Y. Jan. 3, 2020); *Kovalchik v. City of New York*, 2017 WL 3105873, at *4 (S.D.N.Y. July 21, 2017); *Belizaire v. RAV Investigative & Sec. Servs., Ltd.*, 310 F.R.D. 100, 104–05 (S.D.N.Y. 2015).

At the very least, Jasinski was indisputably aware of the action and the need for Respondents to take action in response to it, by the April 25, 2022 deadline, when Petitioner sent Jasinksi the First Proposed Judgment.  *See* Jasinski Decl. ¶ 9.  Jasinski attempts to explain his failure to respond because (1) two partners and several associates left his "boutique law firm" during the COVID-19 pandemic and "[h]iring new attorneys was an arduous process and my firm was left understaffed," Jasinski Decl. ¶ 10; (2) his firm moved offices on October 1, 2021, *id.* ¶ 11; (3) his brother-in-law passed away during the COVID-19 pandemic, *id.* ¶ 12; and (4) his wife's parents' health declined and his wife began to visit Florida once per month to care for them, *id.* ¶ 12–13.  But his declaration is notably silent as to how those events could have excused his failure to respond.  Jasinski's firm moved offices on October 1, 2021, five months prior to the entry of default judgment.  That movement clearly did not affect his ability to take the simple action of responding to this action.  Moreover, it appears that Jasinski's firm lost the attorneys he mentioned in October 2020, a year and a half before the entry of default judgment, *see* Dkt. No. 34-1; Respondents offer no evidence to the contrary.  Finally, Respondents do not provide any information regarding the timing of his brother-in-law's passing or the declining health of his wife's parents or any support for the notion that it would have provided a cause for Respondents' failure to respond.  Thus, none of these events excuse his failure to respond in April 2022.

Even if somehow Jasinksi's willful neglect of the Petition was related to the excuses he proffers, the personal and professional reasons Jasinski highlights would be insufficient to excuse his failure to respond to any of the papers in this case.  "[M]oving law offices, even in the face of the "unique challenges" like the COVID-19 pandemic, constitutes "the struggles of everyday life, [and are] not compelling reasons under a Rule 60(b)(1) analysis." *King v. City of*

10

*New York*, 2021 WL 1856840 at *3 (S.D.N.Y. Apr. 6, 2021). Nor does the loss of employees at Jasinski's law firm make his actions any less willful. *See Pioneer Inv. Servs.*, 507 U.S. at 398 (In the Rule 60(b) analysis, courts "give little weight to the fact that counsel was experiencing upheaval in his law practice . . . ."); *Dixon v. A Better Way Wholesale Autos, Inc.*, 2016 WL 6519116, at *2 (D. Conn. July 22, 2016), *aff'd*, 692 F. App'x 664 (2d Cir. 2017) (finding argument that two associates who left a law firm and were responsible for case insufficient to establish that actions were excusable). And though the Court empathizes with Jasinski's personal struggles, these struggles do not rise to the level that other courts have found necessary to grant relief under Rule 60(b). *See, e.g.*, *United States v. Circami*, 563 F. 2d 26 (2d Cir. 1977) (granting relief to defaulting plaintiffs in Rule 60(b)(6) context where (1) their attorney defaulted due to mental illness, (2) plaintiffs provided evidence of the illness, and (3) attorney repeatedly assured them that the matter was being handled); *P.T. Busana Idaman Nurani v. Marissa by GHR Indus. Trading Corp.*, 151 F.R.D. 32 (S.D.N.Y. 1993) (granting plaintiff's motion to vacate order under Rule 60(b)(6) where plaintiff's former counsel provided documentation and notified the court of her treatment for severe depression).

Finally, and independently dispositive, Respondents have not shown that they "made any attempt to monitor counsel's handling of the lawsuit" and thus Jasinski's willfulness can be imputed onto them. *McNulty*, 137 F.3d at 740. Respondents therefore do not allege facts that would establish that they "'diligently inquired of their attorney as to the status of their case'" before default was entered. *PMJ Cap. Corp. v. Bauco*, 2018 WL 485973, at *3 (S.D.N.Y. Jan. 18, 2018) (quoting *McNulty*, 137 F.3d at 740) (Nathan, J.). Their attitude can be described as lackadaisical at best. Respondents were aware of the significance of the action and developments in it. In early April, at the time Respondents were served with the proposed order

Petitioners asked the Court to sign, Gold reached out twice to Jasinski to "determine the status" of the proceeding. *See* Gold Decl. ¶¶ 7–8. But when he received no response, he did nothing to follow up before the Petition was confirmed. Respondents had notice from the pendency of this action and they took limited action in response to monitor Jasinski's behavior. Then, after the Court's Memorandum and Order was filed, Gold claims that he attempted to contact Jasinski several more times. *See* Gold Decl. ¶¶ 9–12; *see also* Powers Decl. ¶¶ 10–12 (describing three emails that Powers sent to Jasinski with Gold copied). But, once again, Respondents did nothing when they received no response from Jasinski. Gold Decl. ¶¶ 11–12. *See Yuan-Leung v. Orsyn Land Servs., Inc.*, 334 F.R.D. 64, 67 (S.D.N.Y. 2020) (finding default willful in part because defendants failed to communicate their difficulty in reaching the attorney with the court or the opposing party); *Original Appalachian Artworks, Inc. v. Yuil Int'l Trading Corp.*, 105 F.R.D. 113, 116 (S.D.N.Y. 1985) ("[W]here a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and the court, such neglect is inexcusable.").[1] Respondents try to explain away their careless attitude by stating that it was their practice not to monitor Jasinski's handling of actions against them.[2] But when a

---

[1] The fact that Respondents never received an affirmative response from Jasinski that he was handling the matter further cuts against their argument that Jasinski's actions should not be imputed to them. *See Circami*, 563 F. 2d at 34 (pointing to evidence that one of the plaintiffs was repeatedly assured by his lawyer that the matter was being handled in excusing default).
[2] Powers declared,

> Pursuant to the ordinary practices between Alaris, CMS, and Mr. Jasinski, I relied on Mr. Jasinski to coordinate our responses to the matters raised by the Petitioner. It was typical for Mr. Jasinski to reach out to me only if necessary. Therefore, I did not find Mr. Jasinski's lack of response to my e-mails unusual at this time. I did not suspect that Mr. Jasinski was not addressing the matter.

Powers Decl. ¶¶ 8–9. Similarly, Gold declared that "Respondents generally rely upon Mr. Jasinski to appropriately respond to such matters in a timely and professional manner . . . ." Gold Decl. ¶ 6.

Respondent is faced with a petition to confirm an arbitral award for nearly $1 million and has no assurance that anyone has appeared on its behalf to defend against the claim, it is not sufficient to make the conclusory assertion that the Respondent assumed someone was handling it. That is particularly the case when all indications that Respondents received here was that no one was handling the matter on their behalf.

In short, the evidence in the record would support a conclusion that Respondents delayed appearing in this case to cause the maximum possible prejudice to Petitioner and to extend for as long as possible their obligation to pay. The Court need not make that finding, however, to determine that Respondents' failure to respond was "more than merely negligent or careless," but was "egregious and was not satisfactorily explained." *State Univ. of New York*, 2022 WL 14177198, at *3 (internal quotation marks and citation omitted).

### B.     Meritorious Defense

"Vacating a default judgment is not to be a pointless exercise; a court vacates a default judgment only when the party against whom it enters has some prospect of avoiding a judgment—that is, when he has a meritorious defense." *Hong v. Mommy's Jamaican Mkt. Corp.*, 2021 WL 6064101, at *3 (S.D.N.Y. Dec. 22, 2021). "'To make a sufficient showing of a meritorious defense' on a motion to vacate a default judgment, a movant 'need not establish his defense conclusively,' but must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *Gunnells*, 469 F. Supp. 3d at 104 (quoting *McNulty*, 137 F.3d at 740 (internal citations omitted)); *see also Enron Oil Corp.*, 10 F.3d at 98 ("The test of [a meritorious] defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense.").

Here, Respondents fail to put forward any meritorious defense; the motion appears simply to be an effort to avoid or delay collection of the judgment. Respondents assert that

"Petitioner's calculation of damages in the second proposed judgment appears cursory and unsupported, as Petitioner did not provide updated records to reflect the changes made from their first proposed judgement." Dkt. No. 27 at 8. They claim that, in prior awards and the Second Proposed Judgment, Petitioner incorrectly applied interest to the damages owed, failed to explain its calculations, failed to clarify corrections to "transcription errors," and failed to justify the damages amount requested. Dkt. No. 37 at 9. As evidence for their contention, Respondents point to discrepancies in "previous awards" and the "First Proposed Judgment." *Id.* Respondents thus argue that they are "understandably concerned" that Petitioner's Second Proposed Judgment may be inaccurate. *Id.*

This Court's prior Order, confirming the March 2021 Award, however, contained a thorough analysis of the grounds for confirmation and a review of potential errors in the arbitral award. *See* Dkt. No. 16. The Court concluded that the errors in the March 2021 Award were "minor and do not so affect the integrity of the [March 2021] Award" and "to the detriment of the Petitioner." *Id.* at 8. Respondents do not now raise any challenges to the arbitral award and, thus, implicitly waive any claims to a meritorious defense with respect to the Court's confirmation of the March 2021 Award. Rather, they argue that the Second Proposed Judgment entered by this Court could have discrepancies. But these arguments are unavailing.

Respondents fail to highlight any discrepancies with the Second Proposed Judgment, which the Court entered on May 11, 2022. Instead, Respondents point to a single discrepancy in *the First Proposed Judgment*[3]: "Petitioner has over-estimated the principal assessed to Alaris by $3,053.05, including claiming $1,439.06 more in damages for employee Justine Bansil than is

---

[3] In their reply memorandum of law, Respondents based their analysis on "a review of Respondents' calculations that were accepted in previous awards and the bare totals provided . . . in [the] First Proposed Judgment." Dkt. No. 37 at 9.

14

owed according to the underlying arbitral awards." Dkt. No. 37 at 9. But the Court did not enter the First Proposed Judgment. Rather, the Court carefully reviewed Petitioner's First Proposed Judgment to protect the rights of Respondents in the face of their absence and detailed several deficiencies in that judgment. *See* Dkt. No. 20 at 1. Only after Petitioner corrected the errors in the First Proposed Judgment did the Court enter the Second Proposed Judgment.

Respondents do not identify a single error in the Court's actions either in confirming the March 2021 Award or in calculating the judgment, despite having all the information necessary to do so. Respondents have the March 2021 Award, they have the Court's April 11, 2022 Order, and they have the Second Proposed Judgment. Respondents supposed "meritorious defense" can be reframed in the following way: The Second Proposed Judgment *may* be faulty, but there is no argument or evidence it *is* faulty. Respondents' argument "amount[s] to little more than conclusory denials" and, thus, is insufficient to support a finding that Respondents have a meritorious defense. *Green,* 420 F.3d at 109–10.

### C. Prejudice

Whether Petitioner will suffer prejudice if the default judgment is vacated is a closer call. "[D]elay alone is not a sufficient basis for establishing prejudice." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). "Some delay is inevitable when a motion to vacate a default judgment is granted . . . [so] something more is needed. For example, delay may thwart plaintiff's recovery or remedy." *Green*, 420 F.3d at 110 (internal quotation marks and citation omitted). "Accordingly, in determining whether a plaintiff has suffered prejudice, courts consider 'the effect of the delay caused by the defendant's default.'" *Manzanares v. Your Favorite Auto Repair & Diagnostic Center, Inc.*, 2020 WL 6390162, at *8 (E.D.N.Y. Nov. 8, 2020) (quoting *Swarna v. Al-Awadi*, 622 F.3d 123, 142 (2d Cir. 2010)).

As an initial matter, "[a]n absence of prejudice to the nondefaulting party would not in itself entitle the defaulting party to relief from the judgment." *McNulty*, 137 F.3d at 738. Were that the case, the Court's action in entering a default judgment would be a pointless exercise; the responding party could always wait until just after judgment was entered and claim that there would be no prejudice in giving it a second chance. *See State Univ. of New York*, 2022 WL 14177198, at *4 (upholding court's refusal to set aside default judgment "even assuming the absence of prejudice"); *see also Com. Bank of Kuwait*, 15 F.3d at 244 ("While the record does not strongly support a finding of prejudice, we need not scrutinize this factor further because [the defendants'] willful default and the absence of meritorious defenses were sufficient to support the district court's disposition of the case.").

But here, Petitioner would suffer prejudice from vacating the judgment. This case has been ongoing for nearly nine years and has involved multiple rounds of arbitration. Throughout this period, Respondents have repeatedly attempted to skirt or delay judgment. At the conclusion of the 2015 arbitration proceedings, Respondents failed to provide the information necessary for the Arbitrator to determine damages, including basic payroll and employee data, despite direction from the Arbitrator to do so. Dkt. No. 1 ¶¶ 15-16. In 2016, a National Labor Relations Board ("NLRB") Administrative Law Judge found that failure to produce the requested documents was a violation of the National Labor Relations Act—an opinion the NLRB later affirmed along with an order to Respondents to produce the requested documents. *Id.* ¶¶ 14, 23–24. When the Respondents still failed to do so, the NLRB sought enforcement of the order in the Third Circuit, which it ultimately obtained. *Id.* ¶¶ 25, 31; *see also* Dkt. No. 1-1 at 2 n.3. During the 2018 arbitration proceedings, Judge Rakoff held Respondents in contempt of court and imposed sanctions for failing to produce documents necessary to determine damages and interest

16

owed. *Id.* ¶ 37. Respondents' long and consistent history of delay supports a finding of prejudice to Petitioner. *See, e.g.*, *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 541 (S.D.N.Y. 1985) (finding prejudice against plaintiff when defendant had a "history of failing to respond to discovery requests, even when ordered by the court" so "[v]acating the default would provide defendant an additional opportunity for stonewalling").

### D. Balance of the Factors

Weighing the factors, vacatur of the judgment is inappropriate here. Willfulness and a lack of meritorious defense alone would be sufficient to deny Respondents' motion to set aside the judgment. *See Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991) (citing *In re Men's Sportswear, Inc.*, 834 F.2d 1134, 1138–1139 (2d Cir.1987)); *Brock v. Unique Racquetball & Health Clubs, Inc.*, 786 F.2d 61 (2d Cir.1986)) ("A default should not be set aside when it is found to be willful."); *State Street Bank*, 374 F.3d at 174 ("[T]he absence of such a [meritorious] defense is sufficient to support the district court's denial of the defendants' . . . Rule 60(b) motion"). Here, the Court has found that Respondents were willful and lack a meritorious defense. In light of Respondents' unmistakable pattern of abusing the legal and arbitral process to prevent Petitioner's recovery, the Court also found that Petitioner would be prejudiced if the judgment is set aside. The Court thus denies Respondents' Rule 60(b) motion.

## II. Rule 60(b)(6)

"'[I]f the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6).' This is true even where the relief sought pursuant to a more specific Rule 60(b) clause is denied." *In re Pinnock*, 833 F. App'x 498, 502 (2d Cir. 2020) (quoting *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391–92 (2d Cir. 2001)). "Rule 60(b)(1) and Rule 60(b)(6) are 'mutually exclusive,' such 'that any conduct which generally falls under the former cannot stand as a

17

ground for relief under the latter.'" *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Cirami*, 535 F.2d at 740); *see also Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022) (Rule 60(b)(6) "is available only when Rules 60(b)(1) through (b)(5) are inapplicable."). Here, Respondents argue that Jasinski's inattention to this matter due to his personal and professional struggles justifies relief under Rule 60(b)(6). *See* Dkt. No. 27 at 9–12; Dkt. No. 37 at 8–9. The Court has already considered Respondents' arguments for relief in connection with Respondents' Rule 60(b)(1) motion. Accordingly, Respondents Rule 60(b)(6) motion is also denied.

### III. Attorneys' Fees and Costs

Petitioner requests attorneys' fees and costs, arguing that Respondents have continuously failed to comply with court orders and have brought a frivolous motion. Dkt. No. 33 at 14. Petitioner cites no authority for that relief at this stage of the proceedings.[4]

In the Rule 60(b) context, a court may award attorney's fees and costs to the non-defaulting party as a condition to vacatur. "The imposition of conditions as part of granting a Rule 55(c) motion can be used to rectify any prejudice suffered by the nondefaulting party as a result of the default and the subsequent reopening of the litigation." *See Powerserve Int'l, Inc.*, 239 F.3d at 515 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2699 (1998)); *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 52 (E.D.N.Y. 2008) ("[C]ourts in this Circuit have consistently permitted an award of attorney's fees incurred in bringing the default motion as a condition to vacating a default judgment. Importantly, an award of attorneys' fees and costs upon vacating an entry of default does not

---

[4] The cases Petitioner cites relate to the award of fees and costs in connection with a motion to confirm an arbitration award. *See New York City Dist. Council of Carpenters v. New England Constr. Co., Inc.,* 2017 WL 1967743 (S.D.N.Y. May 11, 2017) (granting attorney's fees and costs in connection with a motion to confirm arbitration awards); *Trustees of New York City Dist. Council of Carpenters Pension Fund v. Nav Tech Constr. Corp.*, 2022 WL 95092 (S.D.N.Y. Jan. 10, 2022) (same).

require a finding of willfulness on the part of the defaulting party." (internal quotation marks and citation omitted)).  Here, however, the Court is not vacating the default judgment.  *See Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1078 (2d Cir. 1995) ("Fed. R. Civ. P. 60(b) did not authorize the district court to impose attorney's fees and costs upon [plaintiff] in connection with the denial of his motion to vacate the default judgment, because the rule only addresses *the grant* of relief 'upon such terms as are just.'" (cleaned up)).

Accordingly, the Court declines to award fees and costs.  *See GRJH, Inc. v. McCarthy*, 2008 WL 305099 (N.D.N.Y. Jan. 31, 2008) (citing *Brien*, 71 F.3d at 1078) (declining to award attorney's fees in affirming a denial of a motion for vacatur, stating that there is no authority cited).

## CONCLUSION

The motion to vacate the judgment is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 26.

SO ORDERED.

Dated: November 28, 2022
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge